## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
## CIVIL ACTION NO. 3:23-CV-00321-KDB

| | |
|---|---|
| **GLORIA S. BARRETT,** | |
| **Plaintiff,** | |
| **v.** | **ORDER** |
| **COMMISSIONER OF SOCIAL SECURITY,** | |
| **Defendant.** | |

**THIS MATTER** is before the Court on Plaintiff Gloria Barrett's Complaint (Doc. No. 1) and the Parties' briefs (Doc. Nos. 4, 7). Barrett seeks judicial review of an unfavorable administrative decision denying her applications for disability benefits under the Social Security Act. More specifically, she seeks a remand for further consideration of her maximum RFC because it does not include any mental limitations related to her anxiety and depression. Having reviewed and considered the parties' briefs and exhibits, the administrative record and applicable authority, and for the reasons set forth below, the Court finds this matter should be remanded to allow the ALJ to reconsider his decision that the claimant is not disabled under the relevant sections of the Act. Accordingly, the Court will **REVERSE** the Commissioner's decision, and **REMAND** this matter for further proceedings consistent with this Order.

### I. LEGAL STANDARD

The legal standard for this Court's review of social security benefit determinations is well established. *See Shinaberry v. Saul*, 952 F.3d 113, 120 (4th Cir. 2020). "The Social Security Administration (SSA) provides benefits to individuals who cannot obtain work because of a physical or mental disability. To determine whether an applicant is entitled to benefits, the agency

1

may hold an informal hearing examining (among other things) the kind and number of jobs available for someone with the applicant's disability and other characteristics. The agency's factual findings on that score are 'conclusive' in judicial review of the benefits decision so long as they are supported by 'substantial evidence.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1151-52, 203 L.Ed.2d 504 (2019) (quoting 42 U.S.C. § 405(g)).

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations." *Id.* at 1154 (internal quotation marks and alteration omitted). "[T]he threshold for such evidentiary sufficiency is not high. Substantial evidence ... is more than a mere scintilla.[1] It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks and citations omitted). Accordingly, this Court does not review a final decision of the Commissioner *de novo, Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986), and must affirm the Social Security Administration's disability determination "when [the] ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." *Shinaberry*, 952 F.3d at 120 (internal citations omitted); *see also Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Johnson v. Barnhart*,

---

[1] As the Fourth Circuit has noted, "[s]tandards are easy to recite, but harder to apply. Part of that difficulty ... lies with confusing terminology like 'a scintilla of evidence.' After all, what in the world is a 'scintilla?' ... [D]ating back to the nineteenth century, courts have struggled with the 'distinction between what is a scintilla' and what is not. *Boing v. Raleigh & G.R. Co.*, 87 N.C. 360 (N.C. 1882) (remarking that the distinction 'is so narrow that it is often very difficult for a court to decide upon which side of the line' evidence falls). Recognizing this difficulty, current South Carolina Supreme Court Justice John C. Few once remarked, in jest, that 'scintilla is Latin for "whatever a judge wants it to mean."' ... To overcome the vagaries inherent in the term 'scintilla,' courts should not only recite our well-settled standards ... but also actively engage with the [relevant underlying evidence] in analyzing the arguments of the parties." *Sedar v. Reston Town Ctr. Prop., LLC*, 988 F.3d 756 (4th Cir. 2021).

434 F.3d 650, 653 (4th Cir. 2005) ("Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ].").

Thus, this Court may not weigh the evidence again, nor substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. "In reviewing for substantial evidence" in support of an ALJ's factual findings, "[the reviewing court] do[es] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation marks and alteration omitted). Rather, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled," the court defers to the ALJ's decision. *Id*. (internal quotation marks omitted); *Shinaberry*, 952 F.3d at 123. This is true even if the reviewing court disagrees with the outcome—so long as there is "substantial evidence" in the record to support the final decision below. *Lester v. Schweiker*, 683 F.2d 838, 841 (4th Cir. 1982). However, notwithstanding this limited standard of review of the Commissioner's factual determinations, in all cases the Court must always ensure that proper legal standards are being followed.

## II. FACTS AND PROCEDURAL HISTORY

Ms. Barrett applied for Title II Disability Insurance Benefits on October 12, 2020, with an alleged onset date of March 13, 2020. *See* AR 18. Her application was denied on its first review and then again upon reconsideration. *Id*. On October 29, 2021, Ms. Barrett requested a hearing before an ALJ, which was held on May 11, 2022 before ALJ Joseph Doyle. *Id*. The ALJ returned an unfavorable decision on August 31, 2022. *See* AR 18-31. The Appeals Council denied Ms. Barrett's request for review and thus the ALJ's decision is the final decision of the Commissioner. Plaintiff timely sought judicial review of that decision under 42 U.S.C. § 405(g). Doc. No. 1.

In his decision, the ALJ followed the required five-step sequential evaluation process established by the SSA to determine whether Ms. Barrett was disabled under the law during the relevant period.[2] At step one, the ALJ determined that Plaintiff had not engaged in substantial activity since March 13, 2020. AR 20. At step two, the ALJ determined that Ms. Barrett had a severe medically determinable impairment that significantly limits her ability to perform basic work activities: "fibromyalgia." AR 21. The ALJ also found that all of Ms. Barrett's other impairments "are non-severe or not medically determinable as they have been responsive to treatment, cause no more than minimal vocationally relevant limitations, have not lasted or are not expected to last at a 'severe' level for a continuous period of twelve (12) months, are not expected to result in death, or have not been properly diagnosed by an acceptable medical source (20 CFR 404.1509 and 404.1513(a))." *Id.*

More specifically, the ALJ concluded that "the claimant's medically determinable mental impairments of anxiety disorder and depressive disorder, considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore non-severe." *Id.* In making this finding, the ALJ considered the broad functional areas known as the "paragraph B" criteria and determined "the claimant has only mild limitations with respect to this capacity for understanding, remembering or applying information,

_____

[2] The required five-step sequential evaluation required the ALJ to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(a)-(g) and 404.1520(a)-(g). The claimant has the burden of production and proof in the first four steps, but at step five the Commissioner must prove the claimant can perform other work in the national economy despite his limitations. *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015).

4

interacting with others, concentrating, persisting or maintaining pace, and adapting or managing oneself." *Id.*

The ALJ then found at step three that none of Plaintiff's impairments, nor any combination thereof, met or medically equaled one of the conditions in the Listing of Impairments at 20 C.F.R. Pt. 404, Subpt. P, App. 1. S*ee* AR 13.

Before proceeding to step four, the ALJ found that Ms. Barrett had the following residual function capacity ("RFC"):

> … the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with the following limitations: occasional climbing ladders, ropes, or scaffolds; frequent climbing ramps or stairs, stooping, kneeling, crouching, crawling, or engaging in balance on uneven surfaces.

AR 24.

The ALJ found at step four that Plaintiff was able to perform her past relevant work as a dental assistant and office manager, relying on the testimony of the vocational expert who testified at Ms. Barrett's hearing. AR 30. The ALJ did not make any alternative finding that Plaintiff could perform other jobs that existed in significant numbers in the national economy. In sum, the ALJ concluded that Ms. Barrett has not been under a disability as defined in the Social Security Act from March 13, 2020 through the date of the decision. AR 30-31.

### III.    DISCUSSION

In support of her appeal, Plaintiff argues the ALJ erred by finding that Plaintiff's medically determinable impairments of anxiety disorder and depressive disorder cause no mental limitations on Plaintiff's ability to work and, consequently, Plaintiff's RFC should have reflected some mental limitations to account for these illnesses.  As discussed below, the Court finds that the ALJ failed to properly consider and account for all the record evidence, (in particular the reports of the State Agency psychological consultants and psychological consultant examiner who all opined that Ms.

5

Barrett had at least moderate impairments in several areas of mental functioning), which collectively should have led to the inclusion of some mental limitations in Plaintiff's RFC. Therefore, this matter must be remanded to the Commissioner for further consideration.

A Social Security claimant's RFC must be based on all the evidence, accurately set forth all demonstrated impairments and limitations, and describe the claimant's maximum ability to perform sustained full-time work. *See* § 404.1545(a); SSR 96-8p (defining the ability to work as the ability to do so "8 hours a day, 5 days a week…on a regular and continuous basis"). Significantly, all a claimant's impairments, even impairments found not severe, must be considered when formulating an RFC. § 404.1545(e). The mental portion of the RFC must contain "a detailed assessment of the individual's capacity to perform and sustain mental activities which are critical to work performance…all limits…resulting from the mental impairment must be described in the mental RFC assessment…" SSR 85-16. Indeed, adequate consideration of mental limitations is especially important when evaluating the claimant's ability to perform skilled work, because, "[i]n the world of work, losses of intellectual and emotional capacities are generally more serious when the job is complex." SSR 85-15.

To establish legal error with respect to her RFC, Plaintiff does not need to demonstrate that her mental impairments are devastating or "disabling" in their own right; if the ALJ's exclusion of mental limitations from the RFC is found to be unreasonable as contrary to the evidence, the appropriate disposition of this case is a remand for further proceedings:

> To be clear, in her briefing, Plaintiff does not attempt to demonstrate that these limitations are disabling, nor is she required to at this juncture. Rather, the inquiry simply is whether the ALJ properly accounted for and evaluated those limitations. The undersigned concludes that the ALJ did not.

*Carr-Cooper v. Kijakazi*, No. 5:22-CV-174, 2023 U.S. Dist. LEXIS 100538, at *15-16 (N.D.W. Va. May 19, 2023).

Plaintiff points to several parts of the record which she contends consistently establish her mental limitations. First, and primarily, she relies on the medical opinions of State Agency psychological evaluations and Dr. Walter McNulty, her psychological consultative examiner. AR 105-117, 119-130, 739-745. As summarized by the ALJ, according to the State Agency consultants, "the claimant's mental impairments result in more than minimal, work-related limitations and are therefore severe." AR 27; *see also* AR 129 ("Does the individual have the RFC to perform PRW [past relevant work as a dental assistant and office manager]? **No**."). Specifically, the consultants determined, inter alia, that Ms. Barrett, was "moderately limited" in "[t]he ability to maintain attention and concentration for extended periods," "[t]he ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances," "[t]he ability to work in coordination with or in proximity to others without being distracted by them," and "[t]he ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." Overall, they determined that, "Claimant would be able to maintain attention and concentration for two hours at a time as required for the performance of SRRT's [simple, routine, repetitive tasks] at a non-production pace." AR 114-115, 128-129. The State Agency consultants also found Ms. Barrett was "moderately limited" as to:

- The ability to interact appropriately with the general public;
- The ability to accept instructions and respond appropriately to criticism from supervisors;
- The ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes;
- The ability to respond appropriately to changes in the work setting; and
- The ability to set realistic goals or make plans independently of others.

*Id*.

Similarly, the ALJ described Dr. McNulty's opinion in June 2021as follows: "According to Dr. McNulty in June 2021, the claimant has moderate impairment in several areas of mental functioning." AR 27. Plaintiff was given a "Comprehensive Clinical Psychological Evaluation," in person, by Dr. McNulty in June 2021. AR 739-45. Dr. McNulty felt that the information presented by Ms. Barrett during the evaluation, while "slightly melodramatic," was "reliable." AR 739. He documented that:

> Ms. Barrett stated that her current symptoms involve anxiety which entails feelings of nervousness and tension. She often gets confused. She has difficulty with concentration and focus. She stated that her symptoms are influenced by distress about coping with symptoms of fibromyalgia. She stated that her current anxiety symptoms increased significantly about two years ago secondary to symptoms of fibromyalgia.
> …
>
> Her daily activities involve cooking and completing household chores but she is limited by her fibromyalgia symptoms in terms of what she can do. She walks when she is able. She likes to paint and crochet but has difficulty doing that because of her fibromyalgia symptoms. She reads. She watches church services online. She reported attending to her hygiene and grooming needs regularly but admitted that she often has to force herself to do so. When asked about how her reported symptoms impact activities of daily living, social functioning, concentration and pace, Ms. Barrett stated she avoids leaving home or going to public places and she sleeps poorly.

AR 740-741. With respect to a "work situation," Dr. McNulty opined that he expected that Ms. Barrett "would be able to understand, retain and follow simple instructions" and "sustain attention to perform simple repetitive tasks."[3] AR 744. He found that her motivation, ability to relate to coworkers and supervisors and ability to tolerate stress were all "moderately impaired." *Id.*

---

[3] Dr. McNulty tested Ms. Barrett during the evaluation on her cognitive abilities. For example, he asked her to "Repeat house, cup, spoon, desk, shoe?" Response: "Spoon, house." Then, again five minutes later – "Response: Shoe, house, lamp." For numbers, "Repeat 5, 8, 2 / Response: 5, 8, 2. Repeat 6, 9, 4, 1 / Response: 6, 5, 9, 1."

8

Overall, he concluded that "her ability to tolerate the stress and pressure associated with day to day work activity appears moderately to severely impaired by her report." *Id.*

In explaining Ms. Barrett's RFC, which did not include any limitations with respect to pace, simple instructions, sustaining attention and the like, the ALJ discounted all of these medical opinions, which are consistent with each other, as "unpersuasive." AR 27. He gave four reasons: 1) "although the claimant receives [psychiatric] medication from her primary care provider, she has not received ongoing formal mental health therapy or counseling during the relevant period"; 2) "she described her anxiety as moderately controlled with receipt of medication in September 2020 and … continues to only require a half-tab of lorazepam"; and 3) "she acknowledged several intact activities of daily living" and 4) "although she presented mildly anxious, she was also described as having appropriate affect, full orientation, normal behavior, normal speech, coherent and organized thoughts, fair insight and judgment, and intact remote and recent memory." AR 28.

None of these reasons, taken independently or together, amount to substantial evidence sufficient to support the absence of at least some mental limitation in the RFC. *See Cloninger v. Kijakazi*, No. 3:20-CV-00508-KDB, 2021 WL 3885921, at *2 (W.D.N.C. Aug. 31, 2021) (if Court finds that the ALJ did not fully and fairly consider all the medical evidence, the decision should be remanded for further consideration). Rather, the ALJ here appears to have improperly "cherry-pick[ed]  facts that support a finding of nondisability while ignoring evidence that points to a disability finding." *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 98 (4th Cir. 2020) (internal citation omitted).[4] Indeed, in practical effect, here the ALJ just substitutes his lay opinion for the expert opinions he dismisses as "unpersuasive." *See Arakas*, 983 F.3d at 108.

---

[4] The VE testified that someone who can only perform simple, routine, repetitive tasks in a low-stress job, with only occasional decision-making and occasional changes in the work setting, and occasional interaction with the public and coworkers, cannot perform her past skilled jobs. Tr. 66.

9

First, the Commissioner cites no authority for the ALJ's reliance on the absence of formal, specific treatment by a dedicated mental health professional rather than a claimant's primary care physician. In fact, the ALJ's reference to the lack of visits to mental health providers is quite ironic in light of the ALJ's discounting the opinions of all the mental health experts who evaluated Ms. Barrett's mental capabilities. Second, the fact that a claimant can "moderately control" panic attacks (*after* they onset) with less than a full pill of a powerful psychiatric drug is hardly grounds to dismiss the opinion of medical experts who reached their opinions after already taking into account her prescriptions. *See Franks v. Kijakazi*, No. 1:20-CV-00299-KDB, 2021 WL 5285858, at \*4 (W.D.N.C. Nov. 12, 2021). Third, it is insufficient merely to point to minimal daily activities as proof that a claimant is not disabled. As *Arakas* explains, claimants should not forfeit Social Security benefits for trying to "participate in the everyday activities of life." 983 F.3d at 101. Finally, "because symptoms of mental illness may wax and wane," the fact that Ms. Barrett appeared "alert" when she visited her doctors and exhibited fair judgment, etc. during those examinations (while still complaining of anxiety) is not inconsistent with the conclusion that she has mental limitations that must be taken into account. *See Testamark v. Berryhill*, 736 F. App'x 395, 398–99 (4th Cir. 2018). Simply put, "[b]y relying on these limited observations to discredit the treating source opinions, the ALJ's opinion seizes on insignificant inconsistencies in the treatment record while overlooking the record's broader import."

In sum, while the Commissioner is correct that there is no per se rule requiring that a RFC include mental limitations, *see Shinaberry,* 952 F.3d at 121-22, an ALJ must fairly address all the evidence and account for any limitations presented by a claimant's condition. For the reasons discussed above, the Court finds that the ALJ did not do so here. However, in ordering remand pursuant to sentence four of 42 U.S.C. § 405(g), the Court does not forecast a decision on the

merits of Ms. Barrett's reconsidered application for disability benefits. *See Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 663 (4th Cir. 2017). "Under § 405(g), 'each final decision of the Secretary [is] reviewable by a separate piece of litigation,' and a sentence-four remand order 'terminate[s] the civil action' seeking judicial review of the Secretary's final decision." *Shalala v. Schaefer*, 509 U.S. 292, 299 (1993) (alternation in original) (emphasis omitted) (quoting *Sullivan v. Finkelstein*, 496 U.S. 617, 624-25 (1990)).

## IV.    ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

The Commissioner's decision denying Plaintiff's application for disability and other benefits is **REVERSED.** This matter is **REMANDED** for a new hearing pursuant to Sentence Four of 42 U.S.C. § 405(g).

**SO ORDERED ADJUDGED AND DECREED**.

Signed:    January 19, 2024

Kenneth D. Bell
United States District Judge

11